THEODORE KIMM v. PATRICK GRIFFIN.[1]

December 24, 1896.

Nos. 10,351—(238).

**Deed—Covenants Running with the Land—Party-Wall Agreement.**
A party-wall agreement, under seal, between S. and K., adjoining lot owners, which was duly acknowledged and recorded, provided that whereas K. was about to erect a two-story brick building on his lot adjoining that of S., in consideration that K. erect a good and substantial 12-inch wall, 80 feet long north and south, extending 6 inches on the adjoining lot of S., then said S. promised and agreed that whenever he should erect a building on his lot, and use that portion of said party wall built thereon, he would pay K. one-half the cost of said party wall, to the extent of his use of the same; and for their mutual benefit it was agreed that in all deeds and transfers, of whatever nature, said wall should be reserved as a partition wall, and that the same should be kept in good condition and repair at the expense of both parties, they dividing and paying the expense thereof equally between them, and that such stipulations should apply to and bind the heirs and assigns, executors and administrators, of the respective parties. K. erected the party wall, one-half upon his lot, and one-half upon the adjoining lot of S. Subsequently K. conveyed by warranty deed to M., and thereafter M. conveyed by warranty deed to G., who also purchased by deed of warranty the lot of S., and thereafter erected a two-story building on said lot, using said party wall the whole length for such purpose, and occupied the same. *Held*, that the covenants in the agreement ran with the land, and that a personal action by K. against G. was not enforceable.

---

[1] Reported in 69 N. W. 634.

Appeal by plaintiff from a judgment of the district court for Dakota county, in favor of defendant, entered in pursuance of the order of Crosby, J. Affirmed.

*Ernest Otte,* for appellant.

*W. H. DeKay,* for respondent.

BUCK, J. Action to recover one-half of the cost of a party wall erected under a sealed agreement. The stipulated facts are as follows:

"First. That on the 17th day of November, 1869, the plaintiff was the owner in fee of the middle one-third of lot one (1), block thirteen (13), in the city of Hastings, and described in the complaint in this action, and that one Peter Smith was the owner in fee of the west one-third of said lot one (1), block thirteen (13), which adjoins said middle one-third of said lot one on the west. Second. That on said 17th day of November, 1869, said Theodore Kimm and said Peter Smith, their wives joining, executed the party-wall agreement referred to in said complaint, a copy of which is attached thereto and made a part hereof. Third. That subsequent to the execution of said party-wall agreement, and in or about the spring of 1870, said Theodore Kimm erected a two-story brick building, eighty feet in length, the west wall of which was twelve inches in thickness; one-half thereof, or six inches, resting on the west one-third of said lot one (1), and the other half, or six inches thereof, resting upon the middle third of said lot one. Fourth. That said Theodore Kimm and wife, on the 27th day of January, 1876, conveyed by warranty deed the said middle one-third of said lot one (1), to one Marcus Marx, a copy of which is hereby attached, referred to, and made a part hereof, marked 'Exhibit B.' Fifth. That on the 15th day of July, 1895, said Marcus Marx conveyed by warranty deed to defendant herein, Patrick Griffin, the said middle one-third of said lot one (1), a copy of which is hereby attached, marked 'Exhibit C,' and made a part hereof. Sixth. That on the 12th day of June, 1895, said Peter Smith and wife, Barbara, conveyed by warranty deed to the defendant herein the west one-third of said lot one (1), a copy of which is hereby referred to, marked 'Exhibit D,' and made a part hereof. Seventh. That before the commencement of this action the defendant erected a two-story brick building on said west one-third of said lot one (1), extending the entire length of the west wall, or 'party wall,' above mentioned, joining the same to the building heretofore mentioned, and built on said middle one-third of said lot one (1), and occupied the same, and in doing so used said party wall as the east wall thereof. Dated at Hastings, Minn., Apr. 29th, 1896."

Upon these facts the trial court ordered that judgment be entered in favor of the defendant.

Griffin, the defendant, at the time of the commencement of this action, owned the entire property, having purchased the title to the middle one-third of lot 1 from the Marcus Marx to whom Kimm had conveyed it, and the west one-third of lot 1 defendant had purchased from Peter Smith. All the conveyances were by warranty deeds. On the 17th day of November, 1869, Kimm and wife entered into an agreement with Smith and wife, stating therein that Kimm was about to erect a two-story building upon his lot adjoining Smith's, and that if he (Kimm) should erect a good and substantial 12-inch wall, 80 feet long north and south, extending 6 inches on the east side of Smith's lot, then Smith would, for so much of said party wall as he might use, pay Kimm one-half the cost thereof as soon as the building should be completed and occupied by said Smith. Griffin's acts in the premises are stated in the seventh subdivision of the facts stipulated. By the terms of the agreement the party wall was to be kept in good condition and repair by each party paying share and share alike. All of the stipulations were to apply to and bind the heirs, assigns, executors, and administrators of the respective parties. It was also stipulated that in all deeds and transfers said party wall should be reserved as such for the mutual benefit of the parties.

The evident meaning of these stipulations is that the building of the party wall should not be limited to the parties making them, or during their ownership of their respective premises, but that whoever should succeed to the estates, either their heirs or assigns, should have the same rights and liabilities under the agreement as their predecessors had or might have. If Kimm did not build the wall, and should convey his premises, and his grantee or any subsequent grantee built the wall, then he would have the right to recover the expense thereof from Smith if he still owned the premises and built and occupied the party wall, and, if not, then from his grantees or subsequent grantees of the premises who built and used the wall under the agreement. Each adjoining owner would have an easement in that portion of the party wall owned by the other, and the agreement creates mutual covenants running with each lot. It is under seal, duly acknowledged and recorded. That it does not, in express terms, contain covenants running with the land, is not material. It does create an easement in favor of each respective lot

owner and his successors in interest in the one-half of the wall which stands on the other lot.     Benefits and burdens therefore arise from the covenants contained in the agreement, and are inseparably connected therewith.     There was a joint easement in the wall the moment it was built, and Smith's liability to the extent of one-half the cost arose as soon as it was completed, if he still owned the premises, and erected a dwelling and occupied half of the wall.

But to whom was he liable?     Not to Kimm, as he had, at the time this action was brought, parted with his title, and no longer had any interest in the lot or party wall, and his conveyance contained no reservation of right to recover half the expense of building the wall. When he conveyed his title he was no longer under any legal obligation to keep the wall in repair jointly with the other owner if he should build and occupy the wall according to the agreement.   This right of either party to enforce this stipulation as to keeping the wall in good condition and repair, and thus rendering either party liable to perform it, must necessarily pass to the assignee of the lot.     The agreement has direct reference to the lots, and is beneficial to the respective owners as owners, and not to third persons.     The purchaser bought with the presumption, if not absolute assurance, that in making the purchase he was to enjoy all the benefits received, and be liable for all the obligations incurred.

Such must have been the intention of the parties, for by the very terms of the stipulations the party wall and conditions imposed were to be permanent.     The right was not exercised until more than 25 years after the date of the agreement, and the erection of the building by Kimm, nor until both of the original parties to the agreement had conveyed their respective lots;  and each lot so conveyed was subject, under the agreement, to a burden for the benefit of the adjoining premises.     The obligations of the parties under the stipulation were not to cease with the mere erection of the building and occupation of the party wall, but such burden was to be continuous, so long, at least, as the building endured, and the wall was occupied by the parties or their successors.

If Kimm had not erected the building and occupied the party wall, Marx, as his grantee, or Griffin, as the grantee of Marx, would have had the right to do so under the stipulation which provides that it shall apply to Kimm's assigns.   Griffin, the defendant, was the last

grantee holding under the mesne conveyances, and with this right was the corresponding obligation to repair the party wall and keep it in good condition. He was also the grantee of Smith. But as he had the title to both lots, the burdens and benefits merged in him, and therefore he had no cause of action against any one, and was liable to no one else, because, from the language, and intent to be gathered from the original agreement, we think that the covenant ran with the land, and that Kimm and Smith did not intend a merely personal contract between themselves. Certainly, contracts with reference to party walls should be construed with a view to carry out the purpose and intent of the parties. A party wall is for the common benefit of both tenements which it supports, and either owner can use it for the purpose contemplated by the agreement for its erection and subsequent use.

This view of the case leads to the conclusion that Kimm has no cause of action against Griffin upon the agreement. It was not merely a personal contract between him and Smith. Having parted with all his interest and title in the lot owned by him at the time of the agreement, he was no longer liable under the stipulations to make repairs on the party wall, nor keep it in good condition, nor entitled to any subsequent benefits from the erection and use of the wall by his or Smith's successors. In some jurisdictions it is ruled differently, while in others the rule is that the covenants run with the land. Of the latter class of cases are the following: King v. Wight, 155 Mass. 444, 29 N. E. 644; Richardson v. Tobey, 121 Mass. 457; Platt v. Eggleston, 20 Ohio St. 414.

"A covenant is said to run with the land when either the liability to perform it or the right to take advantage of it passes to the assignee of the land. The liability to perform and the right to take advantage of this covenant both pass to the heir or assignee of the land to which the covenant is attached." Savage v. Mason, 3 Cush. 500.

Construing the agreement and the warranty deeds together, it seems to us clear that the covenant in regard to the party wall must be deemed to run with the land, and that a personal action by K. against G. is not enforceable.

Judgment affirmed.

MITCHELL, J. I concur. Without going into any general discussion of the very abstruse and technical learning of the books as

to what covenants do and what do not run with the land it is sufficient to say that it is settled by the great weight of authority that the covenants of party-wall contracts, like the one under consideration, do run with the land and that all their benefits and burdens— the liability to perform and the right to take advantage of them— both pass to the heir or assignee of the land to which the covenant is attached. This doctrine is really of equitable origin and proceeds upon the theory that such covenants are not to be considered as merely personal or collateral and detached from the land; that they have direct and immediate reference to the mode of occupying and enjoying the land and are intended to be beneficial to the owner as owner and to no other person; that they in effect create a mutual easement in each tract for the benefit of the other. The cases bearing on this subject are largely cited and discussed in the American notes to Dumpor's and Spencer's Cases in 1 Smith, Lead. Cas. 93, 137.

### On Application for Reargument.

#### (January 11, 1897.)

PER CURIAM. Appellant asks a reargument on the ground that the decision herein overrules Pillsbury v. Morris, 54 Minn. 492, 56 N. W. 170, which has, it is claimed, become a rule of property. Notwithstanding what was said in the opinion, the Pillsbury case was correctly decided upon its special facts, which were that the person erecting the party wall expressly reserved his right to enforce payment for one-half of the cost of the wall, when he assigned his lease of the land on which one-half the wall stood. In this respect the case is distinguishable from the one at bar.